```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
JOHN MCGRATH,

                Plaintiff,

                v.                          MEMORANDUM AND DECISION
                                            04-CV-238(JS)(MLO)
UNITED STATES OF AMERICA,

                Defendant.
----------------------------------------x
Appearances:

For Plaintiff:     Kenneth Ording, Esq.
                   Siben & Ferber LLP
                   1455 Veterans Memorial Highway, Suite 102
                   Hauppauge, New York 11788

For Defendant:     Catherine Mary Mirabile, Esq.
                   United States Attorney's Office
                   One Pierrepoint Plaza
                   Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff, John McGrath ("Plaintiff"), seeks damages from the United States pursuant to the Federal Tort Claims Act for personal injuries arising out of a motor vehicle accident. Plaintiff asserts that while operating a tractor trailer for work and stopped at a stop sign, a United States Postal Service ("USPS") vehicle struck Plaintiff's vehicle. The United States claims that the USPS driver was not negligent, and no damages should be paid. Based on the findings of fact and conclusions of law below, this Court finds in favor of the Defendant, and Plaintiff is not entitled to any relief because Plaintiff's injuries were due to his own negligent acts.

The Court presided over the liability phase of the instant action in a two-day bench trial on December 5-6, 2005. Both parties presented witnesses and photograph exhibits. Based upon the evidence and arguments presented, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any of the findings of fact may be deemed conclusions of law, they also shall be considered conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall be considered findings. See Miller v. Fenton, 474 U.S. 104, 113-14, 106 S. Ct. 445, 451-52, 88 L. Ed. 2d 405, 413-14 (1985) (noting the difficulty, at times, of distinguishing findings of fact from conclusions of law).

I.  FINDINGS

   A.  Plaintiff's Motion In Limine As To The Testimony Of Defendant's Expert, Dr. Hayes, Is DENIED.

   A threshold issue arises as to Plaintiff's motion in limine regarding the reliability of the Defendant's expert witness, Dr. Hayes. This Court DENIES Plaintiff's motion in limine. Plaintiff argued the following: (1) that Dr. Hayes' testimony usurps the province of the trier of fact, (2) that his testimony is unreliable because it is not based on science, and (3) his testimony is beyond the scope of his expertise. Defendant posits that when Daubert challenges are made during bench trials, the court's gate-keeping function is more relaxed than when it deals

with a jury because a judge is better equipped than a jury to weigh probative value of expert evidence. Furthermore, Defendant argues that any questions going to Dr. Hayes' methodology is better addressed during the cross-examination of Dr. Hayes.

This Court finds that Dr. Hayes' testimony is relevant and reliable. First, Plaintiff stipulated to Dr. Hayes' qualifications as an expert witness. See Trial Transcript ("Tr.") at 197. Furthermore, Dr. Hayes' scientific, technical, and other specialized knowledge assists this Court as the trier of fact in understanding the evidence and determining the facts in this case. Tr. 293. Dr. Hayes has the requisite knowledge, skill, experience, training, and education. Id. Additionally, his testimony is based on reliable principles and methods, scientific principles, physics, and a variety of post-accident reconstruction computer programs that have been used for approximately the last fifty years. Id. Dr. Hayes has the requisite information inputted into the programs, and he applied the principles and methods reliably to the facts of the case as he understood them to be. Id. For these reasons, Dr. Hayes' expert testimony is admitted into evidence.

B. <u>The Accident</u>

On September 4, 2001, at approximately 7:40 p.m., Plaintiff, an experienced tractor trailer driver, was operating a tractor trailer for FSR Trucking Company. Tr. at 25—26. Plaintiff routinely transported mail from the Mid Island Postal Distribution

3

Facility ("Facility") located in Melville, Long Island to New York City along an assigned route. Id. Plaintiff's vehicle was approximately 65 feet in length and on the day of the accident, Plaintiff's vehicle did not have any mechanical problems or defects. Id. at 29.

The accident occurred on Duryea Road in the eastbound lane as Plaintiff was exiting the eastern most driveway of the Facility and attempted to make a left turn. Id. at 46—48. The Plaintiff's vehicle was struck by a USPS tractor trailer ("USPS Vehicle") operated by Gregory Johnson ("Johnson"), a postal employee and experienced tractor trailer driver who was proceeding east on Duryea Road. Id. at 46—48, 91—93.

At the location of the accident, Duryea Road has two lanes in each direction, and each lane is approximately 25 feet wide. Parking on the sides of the road is prohibited. Id. at 36, 96. The roadway is straight with a gradual incline. Id. at 36. The speed limit on Duryea Road is 30 miles per hour. Id. There are four separate driveways from the Facility that lead into Duryea Road, and the speed limit on those driveways is 5 miles per hour. Id. at 37—38, 41. On the day of the accident, the road was dry and visibility was good. Id. at 37.

A stop sign located approximately 25 feet from Duryea Road faces the traffic exiting the Facility at the most eastern driveway. Id. at 44. Plaintiff testified that he stopped at the

stop sign and at that point saw the USPS Vehicle some 300 feet from him on Duryea Road to his left. Id. at 44–45. He could not see to the right because of hedges and trees. Id. at 45–46. Plaintiff took his foot off the brake and rolled the front of his tractor into Duryea Road where he could see the westbound traffic. Id. at 46. Plaintiff stopped his vehicle a second time and saw that the USPS Vehicle was about 100 feet away to his left and drifting to the right shoulder of the road toward Plaintiff. Id. at 47–48. Plaintiff testified that he could not back up because a vehicle was behind him. Id. at 50. Plaintiff sounded both the horn on his steering wheel and the air horn, but the USPS Vehicle did not turn to the left until it was some eight feet from Plaintiff's vehicle. Id. at 50–52.

Plaintiff could not estimate the rate of speed at which the USPS Vehicle was traveling. Id. at 45, 47. Plaintiff speculates that the USPS Vehicle could have been traveling approximately 15 miles per hour. In any event, Plaintiff did not believe the USPS Vehicle was driving beyond the speed limit. Id. at 74–76. Plaintiff also thought it possible that the USPS Vehicle might turn right into the Facility, although Plaintiff could not recall whether the USPS Vehicle had its blinker on, indicating that it would turn right. Id. at 49, 77.

The defense version of the facts is the more credible account. Johnson testified he was familiar with the Facility. Id.

at 95. Johnson was familiar with the USPS Vehicle he was operating: a Mack flat-nose conventional tractor and 53 foot trailer. Id. at 93. The USPS Vehicle had just exited a driveway to the left of Plaintiff when it entered Duryea Road proceeding eastbound. Id. at 106. Johnson observed the Plaintiff's vehicle traveling on the eastern most driveway "at a pretty good clip" and continued to keep Plaintiff's vehicle in his line of sight. Id. at 106—08. Johnson is uncertain if Plaintiff ever stopped at the stop sign. Id. at 110. To avoid a collision with Plaintiff's vehicle, Johnson moved from the center of the eastbound lane closer to the double solid lines and would have gone into the westbound lane but for an oncoming vehicle in the westbound lane. Id. at 106—07, 110—11. At the time Johnson moved to the left, Plaintiff's vehicle was 15 to 20 feet out into the roadway. Id. at 111. At the time of the accident, Johnson never exceeded 15 to 20 miles per hour on Duryea Road. Id.

The USPS Vehicle's right bumper at the corner of its body collided with the left bumper and corner of Plaintiff's tractor. Id. at 112, 170. The front of Plaintiff's tractor was within 8 to 10 feet of the double lines. Id. at 117. The location that the vehicles came to rest is depicted in Defendant's photo exhibit A3.

Johnson's version of the accident is supported by another eyewitness, John Awgul ("Awgul"), who was operating his private vehicle some 40 feet behind the USPS vehicle at the time of the

6

accident. Id. at 158, 166. While Awgul was waiting to exit the Facility from the employee parking lot, Awgul observed the USPS Vehicle pass in front of him. Id. at 160—61. Awgul then turned right onto Duryea Road behind the USPS Vehicle. Awgul noticed Plaintiff's vehicle traveling at a faster rate of speed than normal for that driveway. Id. at 162—63. Awgul also noted that while Plaintiff did slow down for the stop sign, he never came to a full and complete stop. Id. at 168. Plaintiff then pulled out onto Duryea Road where the USPS Vehicle collided with Plaintiff's vehicle. Id. at 169—70. Just before impact, Awgul testified that the USPS Vehicle decelerated and moved to the left closer to the double yellow lines. Id. at 167.

Finally, the defense version of the facts is corroborated by the expert testimony of Dr. Hayes. Id. at 197—290. Dr. Hayes is an expert in the area of accident reconstruction, occupant dynamics, and injury dynamics. Id. at 198. The methods, techniques, and analyses used by Dr. Hayes have been widely employed by accident reconstructionists, subjected to peer review, and adopted by the National Highway Traffic Safety Board and National Highway Traffic Safety Administration. Id. at 200—01.

Dr. Hayes' testimony is unrebutted and relevant, and the Court adopts the following conclusions. The impact speed of the USPS Vehicle was between 12 and 14.3 miles per hour. The impact speed of Plaintiff's vehicle was approximately 5 miles per hour.

7

Id. at 229. Both vehicles were moving at the point of impact; Plaintiff's vehicle was not in a stopped position upon impact. Id.

Based on the photograph exhibits and Dr. Hayes' testimony, the damage pattern to both vehicles also demonstrates that Plaintiff's vehicle was moving at the time of impact. The damage to the front left bumper — it is pushed to the side and backwards, almost to the point of contacting the left front tire — shows that Plaintiff's vehicle was moving at the time of impact. Id. at 211, 235. Similarly, the damage to the USPS Vehicle — the right front passenger step is pushed inward and rearward — establish that at the time of impact Plaintiff's vehicle was moving forward. Id. at 248–51.

Further evidence of impact speeds was secured by Dr. Hayes' use of computer programs that simulate automobile collisions and occupant dynamics. Id. at 222, 228–29. Dr. Hayes testified that the way in which Plaintiff was injured demonstrates that Plaintiff's vehicle was moving at the time of impact. Id. at 227–29. The Court finds that the relative speed of the vehicles has been determined to a reasonable degree of engineering and accident reconstruction certainty.

II. LEGAL STANDARD

Under the Federal Tort Claims Act, state law governs tort liability for an accident caused by the alleged negligence of a United States employee. See 28 U.S.C. § 1346(b); Richards v.

United States, 369 U.S. 1, 11, 7 L. Ed. 2d 492, 82 S. Ct. 585 (1962); Grant v. United States, 271 F.2d 651, 654 (2d. Cir. 1959); Hodder v. United States, 328 F. Supp. 2d 335, 341 (E.D.N.Y. 2004). In this case, the accident occurred in New York, and so New York law applies. New York law requires a plaintiff to establish that (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and (3) that the breach proximately caused the plaintiff's injuries. See Hodder, 328 F. Supp. 2d at 341.

New York's Vehicle and Traffic Law states that "it is the duty of both drivers to operate their automobiles with reasonable care, taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." Id.

> Both drivers are under a duty: (1) to maintain a reasonably safe rate of speed; (2) to have their automobiles under reasonable control; (3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view; and (4) to use reasonable care to avoid an accident.

Id. (citations omitted).

New York Vehicle and Traffic Law, in pertinent part, requires a "driver of a vehicle about to enter . . . a roadway from any place other than another roadway shall yield the right of way to all vehicles approaching on the roadway to be entered or crossed." N.Y. Veh. & Traff. Law § 1143. Furthermore, New York requires those drivers emerging from driveways to stop "at the point nearest the roadway to be entered where the driver has a view of approaching traffic thereon." N.Y. Veh. & Traff. Law § 1173.

9

III. DISCUSSION

Applying the law to the facts, this Court finds that Johnson was not negligent when operating the USPS Vehicle at the time of the accident. Plaintiff was the negligent driver, and Plaintiff's own negligence caused his injuries. Thus, the Defendant is not liable to Plaintiff for damages.

First, Johnson was moving at a reasonable rate of speed: 15-20 miles per hour on a road that limited speed to 30 miles per hour. Second, Johnson had his vehicle under reasonable control the entire time. Johnson was aware of the Plaintiff's vehicle, the oncoming traffic, and traffic behind him. He used reasonable care to avoid the accident by slowing down and ultimately braking and getting as close to the double yellow lines as possible without disrupting the traffic on the other side of the yellow lines.

Plaintiff, however, did not fulfill his duty, and he did not use reasonable care to avoid an accident. First, Plaintiff did not stop at the stop sign as required by New York Vehicle and Traffic Law. Second, Plaintiff entered Duryea Road despite his own observation of an oncoming tractor trailer. Third, Plaintiff testified that he was unsure as to what Johnson intended to do – either to turn right into the Mid-Island Center or to continue straight. Plaintiff could have and should have waited until Duryea Road was clear before entering the intersection, in light of the

fact that Plaintiff was unsure whether the oncoming USPS Vehicle was going to turn right or continue straight. By not waiting for traffic to clear, Plaintiff acted unreasonably by driving onto Duryea Road in the face of an oncoming tractor trailer.

IV. CONCLUSION

Based on the above findings of fact and conclusions of law, this Court holds that Plaintiff was in fact the sole negligent party and the proximate cause of his injuries. Johnson, as the driver of the USPS Vehicle, did not act negligently when he collided with Plaintiff's vehicle, and therefore, Defendant is not liable to Plaintiff. The Court RULES in favor of the Defendant. Plaintiff's claims against Defendant are dismissed with prejudice. The Clerk of the Court is ordered to mark this matter as closed.


Dated: Central Islip, New York
       December  9 , 2005

                                    SO ORDERED

                                    /s/ JOANNA SEYBERT
                                    Joanna Seybert, U.S.D.J.